# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. _____

VERTICAL BRIDGE DEVELOPMENT, LLC

    Plaintiff,

v.

CITY OF COLORADO SPRINGS,

    Defendant.

## COMPLAINT

Plaintiff alleges:

1. Plaintiff Vertical Bridge Development, LLC ("Vertical Bridge") is a Delaware Limited Liability Company, registered to do business in the State of Colorado.

2. The City of Colorado Springs (the "City") is a municipal corporation and is a home rule city under the constitution and laws of the State of Colorado.

3. Vertical Bridge is in the wireless telecommunications industry and places constructs, modifies, operates, and manages telecommunication infrastructure on behalf of its clients across the United States, including construction of free standing stealth (and other) commercial mobile radio service facilities ("CMRS").

4. Under the provisions of the City Code of the City of Colorado Springs (the "Code") the City regulates the placement and construction of CMRS facilities. See § 7.4.601, *et seq.*, and § 7.5.501, *et seq.*

5. This action seeks relief from the City's improper delay of final action on Plaintiff's application ("Application") for the construction of a free standing CMRS facility and corresponding request for approval of a development plan. Approval of the Application would allow construction of a telecommunications tower to improve wireless telecommunication service in the Colorado Springs, Colorado area.

6. The City has failed to take final action on Plaintiff's Application within a reasonable period of time as required by the Federal Telecommunications Act of 1996 (the "TCA") and Colorado state laws, including C.R.S. § 29-27-401, *et seq*. (the "Colorado Siting Act"), as the City did not act on Plaintiff's application within 150 days of submission. Plaintiff seeks declaratory, injunctive, and mandamus relief pursuant to 47 U.S.C. §332 and 28 U.S.C. §2201, requesting that the City be ordered to approve Plaintiff's Application or the Application be deemed approved, and that Plaintiff be granted permission to construct its proposed facility in compliance therewith.

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1367 because these claims arise under the laws of the United States, specifically 47 U.S.C. §332(c)(7).

8. This case presents an actual controversy under Article III of the United States Constitution and 28 U.S.C. §2201 because the City has violated Plaintiff's federal rights under the TCA.

9. This Court has supplemental jurisdiction under 28 U.S.C. §1367(a) for Plaintiff's state law claims under Colo. Rev. Stat. § 29-27-401, *et seq*.

10. Venue is proper in this Court because the City is in this judicial district, the events and/or omissions giving rise to this action occurred in this judicial district, and the property affected is located within this judicial district.

11. The TCA provides that "the Court shall hear and decide such action on an expedited basis." 47 U.S.C. §332(c)(7).

12. One of Vertical Bridge's clients is T-Mobile Central LLC ("T-Mobile"), which holds one or more licenses granted by the Federal Communications Commission ("FCC"), to provide commercial radio services, or wireless telecommunication services, across the United States.

13. T-Mobile engaged Vertical Bridge to locate, build, and operate a telecommunications tower for use by T-Mobile to provide wireless telecommunication services in Colorado Springs, Colorado.

14. T-Mobile provides wireless communications services in El Paso County, Colorado. To address coverage and capacity issues for its cellular network in the Colorado Springs area, T-Mobile engaged Vertical Bridge to locate, construct, and operate a telecommunications tower in Colorado Springs, Colorado.

15. Vertical Bridge contacted multiple property owners of potential tower sites in the Colorado Springs area, including Transit Mix Concrete Co. (the "Property Owner"), who was the owner of the property located at 444 E. Costilla Street, Colorado Springs, Colorado, 80903 (the "Property"). Vertical Bridge and the Property Owner executed a lease to allow Vertical Bridge the right to lease certain portions of the Property for placement of an 80-foot monopole telecommunications tower (the "Proposed Tower").

16. The Property is zoned M-2, Heavy Industrial. The maximum height allowed in an M-2, Heavy Industrial zone is 80 feet. The Colorado Springs City Code provides that applications for freestanding stealth CMRS facilities that are less than the maximum height of the zone, such as the Proposed Tower, are subject to administrative review in accordance with the development plan application and review procedures in Chapter 7, Article 5, Part 5 of the City Code.

## COLORADO SPRINGS' ZONING CODE

17. The Zoning Code of the City of Colorado Springs (the "Zoning Code") § 7.5.503 provides that development plans are reviewed administratively by the Planning Department, unless the development plan is a required as part of an application for establishment or change of a zone district, a use variance, or conditional use. *See also* Zoning Code § 7.5.104B ("The Manager shall have jurisdiction over the following matters unless appealed to the Planning Commission or City Council: ... Development plans …")

18. Section 7.5.906A of the Zoning Code provides that the administrative decisions of the City's Planning Department Manager are appealable to the City's Planning Commission. *See also* Zoning Code § 7.5.104B Table. Section 7.5.905A of the Zoning Code provides that failure to timely appeal a Manager's administrative decision "shall be deemed to be a waiver of the applicant's or a party in interest's right to appeal to the courts under rule 106 of the Colorado Rules of Civil Procedure for failure to exhaust administrative remedies."

19. Actions of the City's Planning Commission are appealable to City Council and failure to timely appeal a Planning Commission decision is "deemed to be a waiver of the applicant's or a party in interest's right to appeal to the courts under rule 106 of the Colorado Rules of Civil Procedure for failure to exhaust administrative remedies." Sections 7.5.906B(1) and (5) of the

Zoning Code. Section 7.5.906B(6) states that on appeals "the decision of City Council shall be final agency action, and shall be subject to review by the courts pursuant to applicable rules and statutes, unless the matter is remanded to the Planning Commission [or other applicable reviewing body]."

## APPLICATION TIMELINE

20. On September 24, 2018, Vertical Bridge submitted an application to the City for approval of a CMRS freestanding stealth facility to build the Proposed Tower on the Property (the "Application") and the City confirmed that the Application was complete.

21. On October 19, 2018, the City requested additional information to supplement the Application. Vertical Bridge responded to the City's request and provided the requested supplemental information to the City on October 30, 2018.

22. On February 27, 2019, through counsel, Vertical Bridge informed the City that under the TCA and the Colorado Siting Act that the City only had 150 days to process the Application and that by Vertical Bridge's calculation the end of the 150-day period would be March 4, 2019.

23. On or about February 28, 2019/March 1, 2019, through counsel, Vertical Bridge and the City agreed to toll the 150-day period up to and including March 7, 2019.

24. On March 7, 2019, the City delivered a letter to Vertical Bridge in which the City's Planning Department administratively denied the Application ("Planning Department Decision"). The Planning Department Decision, though not constituting a final action on the application, is not supported by substantial evidence.

25. On March 18, 2019, Vertical Bridge filed a timely appeal application to appeal the Administrative Decision to the City's Planning Commission.

## COUNT I VIOLATION OF 47 U.S.C. § 332(c)(7)(B)(ii)
## (FAILURE TO ACT WITHIN A REASONABLE PERIOD OF TIME UNDER TCA)

26. Plaintiff restates and incorporates by reference paragraphs 1 through 25 above as if fully set forth herein.

27. The TCA comprehensively addresses telecommunications policy and the development of facilities to provide telecommunications services throughout the United States. The TCA restricts the authority of local governments to prevent the development of telecommunications towers needed to provide adequate wireless communications services.

28. The TCA provides that "[a] State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request." 47 U.S.C. § 332(c)(7)(B)(ii).

29. In an interpretation upheld by the U.S. Supreme Court, the Federal Communications Commission ("FCC") has generally interpreted "a reasonable period of time" in which to process an application as providing localities 90 days to act on applications to place new antennas on existing towers and 150 days to act on other siting applications ("Shot Clock"). Failure to act on a zoning application within the applicable 90- or 150-day time frame is presumably a "failure to act" under 47 USC 332(c)(7)(B)(v).

30. The Shot Clock under the TCA may be extended by mutual agreement of the applicant and the locality as here. Additionally, if an applicant submits an incomplete application, the time it takes for the applicant to respond to a state or local government's request for additional information would not count toward the 90– or 150–day time frame if the state or local government

notified the applicant that the application was incomplete within 30 days of receiving the application.

31. A final action by a local government or any instrumentality thereof must be one that marks the consummation of the instrumentality's decisionmaking process.

32. An initial administrative decision is not a "final action" for the TCA if that administrative decision must be reviewed administratively before it may be reviewed judicially.

33. The City has adopted, in its Zoning Code, a process whereby an administrative decision of the Planning Department on a development plan application is not final, because it must be reviewed by the City's Planning Department and the City's City Council before it may be reviewed judicially.

34. The City's Planning Department Decision is not final action, because it is not the consummation of the instrumentality's decisionmaking process.

35. The City has violated 47 U.S.C. § 332(c)(7)(B)(ii) because it has failed to act on the Application within a reasonable period of time.

36. The TCA provides, in pertinent part, that:

> Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action, or failure to act, commence an action in any court of competent jurisdiction. The court shall herein decide such action on an expedited basis.

47 U.S.C. §332(c)(7)(B)(v).

37. Vertical Bridge is a "person[s] adversely affected" as that term is used in 47 U.S.C. §332(c)(7)(B)(v).

38. Wireless telecommunications service is a "personal wireless service" for purposes of the TCA. 47 U.S.C. §332(c)(7)(C)(i).

39. The TCA has been interpreted to vest courts of competent jurisdiction with authority to grant mandamus relief if such relief would be warranted under the circumstances.

### COUNT II VIOLATION OF COLO. REV. STAT. § 29-27-403(1)(c)
### (FAILURE TO RESPOND WITHIN 150 DAYS UNDER COLORADO SITING ACT)

40. Plaintiff restates and incorporates by reference paragraphs 1 through 39 above as if fully set forth herein.

41. C.R.S. § 29-27-401, *et seq.*, ("Act" or "Colorado Siting Act") went into effect. The Act serves to regulate the power of local governments related to telecommunication facility applications.

42. The Colorado Siting Act requires the City to process a complete application that involves a new structure or a new wireless service facility within 150 calendar days. Colo. Rev. Stat. § 29-27-403(1)(c).

43. The City was required to deliver to Plaintiff a final decision in writing regarding Plaintiff's September 24, 2018 application by March 7, 2018. The City did not provide a final decision. Thus, Plaintiff's Application is deemed approved.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

1. Issue an Order declaring that the City's Planning Department Decision is not final action as that term is intended in 47 U.S.C. §§ 332(c)(7)(B)(ii) and 332(c)(7)(B)(v).

2. Issue an Order declaring the City's failure to act on the Application violates the requirement that a state or local government must act on "any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after

the request is duly filed with such government or instrumentality" requirement of 47 U.S.C. § 332(c)(7)(B)(ii), and Plaintiff's Application is therefore deemed approved;

    3.    Issue an expedited mandatory injunction or writ of mandamus compelling the City to approve the Application, including the development plan, and any other approvals necessary for Plaintiff to begin construction of the Proposed Tower, in accordance with Plaintiff's Application;

    4.    Issue an Order reserving jurisdiction to this Court to resolve any issues between the parties as to further issues related to the Proposed Tower; and

    5.    Provide for such other and further relief as the Court deems just and proper.

Dated: April 5, 2019

Respectfully submitted,

SPARKS WILLSON BORGES
BRANDT & JOHNSON, PC


s/*Scott W. Johnson*
SPARKS WILLSON BORGES
BRANDT & JOHNSON, PC
Scott W. Johnson
24 S. Weber St., Suite 400
Colorado Springs, CO 80903
Telephone: (719) 634-5700
Facsimile:  (719) 633-8477
Emails:  swj@sparkswillson.com
Attorneys for Plaintiff